JUAN SIFONTES RAMOS ET AL., demandantes y recurrentes, *v.* OLIVER EXTERMINATING SERVICES CORPORATION, demandada y recurrida.

Número: RE-85-557          Resuelto: 5 de abril de 1991

*Rafael A. Oliveras López de Victoria,* abogado del recurrente; *Jorge R. Dávila,* abogado de la recurrida.

## SENTENCIA

Expedimos el auto de revisión radicado ante este Tribunal por el demandante recurrente Sifontes Ramos con el propósito de revisar una sentencia emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, mediante la cual se desestimó una demanda que el recurrente había radicado ante dicho foro judicial sobre "despido ilegal y daños y perjucios". Procede la confirmación de la mencionada sentencia desestimatoria. Veamos por qué.

## I

El demandante recurrente Sifontes Ramos trabajaba como gerente de la demandada recurrida Oliver Exterminating Services Corporation. Éste se vio afectado, el día 19 de noviembre de 1982, por una condición de "aneurisma cerebral". El asunto fue

reportado al Fondo del Seguro del Estado como un "accidente del trabajo". Sifontes Ramos se trasladó a la ciudad de Nueva York, donde fue operado. Se reintegró a su trabajo con Oliver Exterminating Services Corporation el 1ro de febrero de 1983. Transcurridos seis (6) meses de haberlo así hecho, Sifontes Ramos tuvo que ausentarse nuevamente de su trabajo el 26 de septiembre de 1983, trasladándose a Nueva York, donde fue operado por segunda ocasión. El 20 de diciembre de 1983, el Fondo del Seguro del Estado emitió decisión en el caso. Resolvió que *no* se trataba de un "accidente del trabajo". Sifontes Ramos acudió en revisión ante la Comisión Industrial de Puerto Rico. Dicho recurso de revisión no ha sido aún resuelto por dicha Comisión. Oliver Exterminating Services Corporation, mediante carta de fecha 2 de abril de 1984, le informó a Sifontes Ramos que había dado por terminado su relación de patrono-empleado. Dicha actuación patronal fue la causa de la acción judicial radicada por Sifontes Ramos. El tribunal de instancia, al declarar con lugar una moción de desestimación radicada por Oliver Exterminating Services Corporation, resolvió que el período de un año que establece el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7 —término máximo durante el cual viene un patrono obligado a reservarle el empleo a un obrero que ha sufrido un accidente del trabajo— es uno que no puede ser interrumpido.

## II

Independientemente del hecho de que el "accidente" sufrido por el recurrente Sifontes Ramos pueda ser considerado como uno del trabajo, o, por el contrario, uno no ocupacional, lo cierto es que procede la confirmación de la sentencia recurrida. Esto es así ya que no cabe la menor duda de que transcurrió tanto el término de seis (6) meses que establece la Sec. 3(q) de la Ley de Beneficios por Incapacidad de 1968 (11 L.P.R.A. sec. 203(q)), como el período de un (1) año que prescribe el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, ante, *sin que el recurrente*

*Sifontes Ramos cumpliera con los requisitos que claramente establecen los referidos artículos de ley.*

Por los fundamentos antes expresados, *se dicta sentencia confirmatoria de la dictada por el tribunal de instancia.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. Los Jueces Asociados Señores Rebollo López y Hernández Denton emitieron opiniones concurrentes. La Juez Asociada Señora Naveira de Rodón emitió opinión disidente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Conforme surge de la demanda que ante el Tribunal Superior de Puerto Rico, Sala de San Juan, radicara el demandante Juan Sifontes Ramos,[1] éste comenzó a trabajar con la demandada Oliver Exterminating Services Corp. (en adelante Oliver Exterminating), en calidad de gerente, el día 19 de junio de 1981. El demandante Sifontes Ramos sufrió —alegadamente como consecuencia de una aneurisma cerebral— un "accidente del trabajo" *el día 19 de noviembre de 1982.* Ello causó que el demandante, luego de que el asunto fuera reportado al Fondo del Seguro del Estado (en adelante el Fondo), se ausentara de su trabajo para recibir tratamiento médico para su condición. Sifontes Ramos se trasladó al estado de Nueva York, Estados Unidos de América, donde fue intervenido quirúrgicamente. Habiendo regresado a Puerto Rico, el demandante Sifontes Ramos se reintegró a su trabajo con la demandada *el 1ro de febrero de 1983.* Al cabo de aproximadamente seis (6) meses,

---

[1] A los fines de la resolución de *la moción de desestimación* que ante el tribunal de instancia radicara la parte demandada, ésta "aceptó" la veracidad de lo alegado en la demanda por el demandante Sifontes Ramos. A esos efectos, véase *Cervecería Corona, Inc. v. Tribunal Superior,* 99 D.P.R. 698, 701 (1971).

facultativos médicos que le atendían le recomendaron al demandante Sifontes Ramos una segunda intervención quirúrgica, ausentándose éste de su trabajo con la demandada *el día 26 de septiembre de 1983*. Fue operado, nuevamente en Nueva York, tres días más tarde.

El 20 de diciembre de 1983, el Administrador del Fondo del Seguro del Estado emitió decisión en el caso. Determinó que procedía ordenar el cierre y archivo de la reclamación radicada ante dicho organismo administrativo por razón de que el "accidente" alegadamente sufrido por el recurrente Sifontes Ramos no cualificaba como un "accidente del trabajo" al amparo de las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq*. La referida decisión o conclusión se basó en que las "aneurismas cerebrales" son "condiciones congénitas cuya ruptura es espontánea y nada tienen que ver con el trabajo". Apéndice a Solicitud de revisión, pág. 58. De la decisión emitida por el Administrador *no* surgen los fundamentos científicos en que se basa la antes mencionada aseveración. Inconforme, el señor Sifontes Ramos acudió, en revisión de la decisión antes mencionada, ante la Comisión Industrial de Puerto Rico, Caso Núm. 84-102–36-9055-1. *El mismo se encuentra actualmente pendiente ante dicho organismo administrativo*.

El *2 de abril de 1984*, no habiéndose reintegrado Sifontes Ramos a su trabajo, la demandada Oliver Exterminating le notificó a éste, mediante carta a esos efectos, que debido a su prolongada ausencia se había decidido que no podía seguir reservándole su empleo. El 11 de abril de 1984, Sifontes Ramos radicó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, demanda sobre "despido ilegal y daños y perjuicios". En la misma se alegó, en síntesis y en lo pertinente, que la actuación de la demandada Oliver Exterminating violaba las disposiciones del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, teniendo él derecho, en consecuencia, a recibir de parte de la demandada todos los "beneficios" que establece dicha disposición legal.

Luego de los trámites legales correspondientes, la demandada Oliver Exterminating radicó *una moción de desestimación* ante el tribunal de instancia. En la misma alegó, en síntesis, que el citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo no era aplicable al caso de autos por cuanto, habiendo sufrido el demandante el alegado accidente del trabajo el día 19 de noviembre de 1982, éste había estado ausente de su empleo por un período de tiempo en exceso de un año, cual es el término máximo que dicha disposición legal requiere que se le reserve el empleo a un trabajador que se ha ausentado del mismo debido a un accidente del trabajo. Por su parte, el demandante Sifontes Ramos, al oponerse a la desestimación solicitada, sostuvo que el término de un año al que alude el referido Art. 5a fue "interrumpido" al él haber regresado a trabajar el 1ro de febrero de 1983.

El tribunal de instancia, mediante sentencia de fecha 25 de octubre de 1985, desestimó la demanda radicada. Resolvió, en síntesis, que el lenguaje del citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo respecto al período de un año era uno "claro y específico . . . y libre de ambigüedad", *Exhibit* A, pág. 8; esto es, que el referido período no era susceptible de ser interrumpido.

Inconforme, el demandante Sifontes Ramos acudió en revisión ante este Tribunal. En el recurso que a esos efectos radicara le imputó al foro de instancia haber errado al así resolver. Expedimos el auto de revisión solicitado.

I

Dados los hechos particulares del caso ante nuestra consideración —en especial, en vista del hecho de que la decisión del Administrador del Fondo es una que *no* es final y firme, razón por la cual todavía no se puede precisar si se trata de un accidente no ocupacional o, por el contrario, un accidente del trabajo— *nos enfrentamos a una situación sumamente particular, ya que a la misma pueden ser aplicables una de dos disposiciones estatutarias distintas*, a saber: la Sec. 3(q) de la Ley de Beneficios por

Incapacidad de 1968 (11 L.P.R.A. sec. 203(q)) *o* el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, ante.

Dispone la citada *Sec. 3(q)* que:

(q) *Reinstalación después de la incapacidad.*

En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

(1) que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, *y siempre y cuando que dicho requerimiento no se haga después de transcurridos seis (6) meses desde la fecha de comienzo de la incapacidad;*

(2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición; y

(3) que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de los treinta (30) días siguientes a la fecha en que se hizo el requerimiento de reposición. (Énfasis suplido.)

En *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50 (1984), tuvimos la oportunidad de interpretar la transcrita disposición legal. Resolvimos en dicho caso, en síntesis y en lo pertinente, que para que el empleado *temporalmente* incapacitado por razón de *incapacidad o accidente no ocupacional* tenga derecho a ser reinstalado en su antiguo empleo éste viene obligado, además de cumplir con los demás requisitos que exige la Ley de Beneficios por Incapacidad de 1968, *a requerir su reinstalación en o antes de que transcurra el término de seis meses desde la fecha en que se incapacitó.*

No debe haber duda alguna, en consecuencia, de que en la alternativa de que prevalezca la decisión emitida por el Administrador del Fondo —a los efectos de que no se trata de un accidente del trabajo y sí de una incapacidad no ocupacional— el recurrente Sifontes Ramos *no* tiene derecho a ser reinstalado en su antiguo

empleo con la recurrida Oliver Exterminating. Ello por razón de que, conforme las disposiciones de la antes citada Sec. 3(q) de la Ley de Beneficios por Incapacidad, dicho patrono sólo venía en la obligación de reservarle el empleo al recurrente por un período de seis meses desde la fecha en que éste se incapacitó. *Rojas v. Méndez & Co., Inc.*, ante. *Ello, como hemos visto, no dispone totalmente del caso.*

Existiendo la *posibilidad* en el presente caso, sin embargo, de que la decisión emitida por el Administrador del Fondo sea revocada —y, en consecuencia, se determine finalmente que se trata de un accidente del trabajo— *venimos en la obligación de examinar el asunto a la luz de las disposiciones del citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo.*

## II

El Art. 5a de la citada Ley de Compensaciones por Accidentes del Trabajo —Ley Núm. 45 de 18 de abril de 1935, según enmendada— dispone:

*Sec. 7. Reinstalación después de incapacidad*

En los casos de *inhabilitación para el trabajo* de acuerdo con las disposiciones de este Capítulo, *el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones*: (1) que el obrero o empleado *requiera al patrono* para que lo reponga en su empleo dentro del *término de quince días*, contados a partir de la fecha en que el obrero o empleado *fuere dado de alta*, y siempre y cuando *que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente*; (2) que el obrero o empleado esté *mental y físicamente capacitado* para ocupar dicho empleo *en el momento* en que solicite del patrono su reposición; y (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes·a la fecha en que se hizo el requerimiento de reposición.)

*Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado.* El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32. (Énfasis suplido.)

El transcrito Art. 5a forma parte de toda una legislación de índole remedial vigente en nuestro ordenamiento, legislación que no hay duda debe ser interpretada liberalmente y de conformidad con el propósito que la inspiró. Véanse: Sec. 1 de la Ley de Beneficios por Incapacidad, 11 L.P.R.A. sec. 201; *Correa v. Comisión Industrial,* 56 D.P.R. 816, 818 (1940); *Feliciano Figueroa v. Comisión Industrial,* 84 D.P.R. 196, 215 (1961); *Torres García v. F.S.E.,* 111 D.P.R. 469 (1981); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico,* 2da ed., San Juan, Pubs. J.T.S., 1987, págs. 458–459; *Industrial Comm'n v. McCartin,* 330 U.S. 622, 628 (1946). Dicha disposición legal, *en específico,* tiene un propósito loable por demás. Mediante la aplicación del mismo se le garantiza al trabajador, que se incapacita temporalmente como consecuencia de un *accidente o enfermedad ocupacional,* tranquilidad de espíritu por cuanto, *cumplidos ciertos requisitos,* ese trabajador tiene el derecho a ser reinstalado en su empleo.

Ello no obstante —y como expresáramos en *Rojas v. Méndez y Co., Inc.,* ante, al interpretar la Sec. 3(q) de la Ley de Beneficios por Incapacidad de 1968, ante— (2) consciente nuestro legislador de la carga y el gravamen económico que podría resultar para un patrono la aplicación indiscriminada de esta clase de disposiciones, éste estableció *mediante lenguaje claro y preciso* unos

---

(2)  Ley Núm. 139 de 26 de junio de 1968, conocida la misma por "Sinot", 11 L.P.R.A. sec. 203(q).

La citada Sec. 203(q) es una disposición sustancialmente igual al antes citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11· L.P.R.A. sec. 7, pero relativa la misma a accidentes o enfermedades *no* ocupacionales.

requisitos para el ejercicio por parte del trabajador de ese "derecho" a la reposición.

Una simple lectura del citado Art. 5a revela cuáles son esos requisitos:

(1) que se trate de un accidente o enfermedad ocupacional que inhabilite al empleado para trabajar;

(2) que dentro de los quince (15) días de haber sido dado de alta, el empleado solicite del patrono que lo reponga a su empleo;

(3) que dicho requerimiento de reposición sea hecho, en adición, dentro de los doce (12) meses de haber ocurrido el "accidente del trabajo";

(4) que en el momento en que se hace el referido requerimiento el empleado esté física y mentalmente capacitado para realizar las funciones de su empleo, y

(5) que el empleo o posición que ocupaba el empleado "subsista" al momento en que éste solicita su reposición.

No hay duda que, prima facie, en el caso del demandante recurrente Sifontes Ramos no se cumple con, cuando menos, tres de los antes enumerados requisitos. No se cumple con el segundo de ellos, esto es, haber solicitado la reposición dentro de los quince días de haber sido "dado de alta", por la sencilla razón de que el demandante Sifontes Ramos no sólo nunca solicitó formalmente la reposición sino que nunca fue dado de alta dentro del año siguiente a sufrir el accidente del trabajo. Por otro lado, una simple operación matemática es todo lo que se necesita para poder uno percatarse de que se incumple con el tercer requisito, ya que no hay duda de que si el "accidente del trabajo" ocurrió el día 19 de noviembre de 1982, a la fecha de la carta que a Sifontes Ramos le enviara Oliver Exterminating, ya había transcurrido en exceso de un año. Por último, resulta obvio que al momento de la referida carta, el demandante Sifontes Ramos todavía no se encontraba física y mentalmente capacitado para realizar el trabajo de gerente de la demandada recurrida por cuanto todavía no había sido dado de alta.

Ello no obstante, argumenta el demandante recurrente que el hecho de que él regresara a trabajar, luego de sufrir la primera

intervención quirúrgica, el *día 1ro de febrero de 1983* y que estuviera desempeñando sus funciones hasta *el 26 de septiembre de 1983* efectivamente "interrumpió" el período de un año prescrito por el referido Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, ante, causando que dicho término "comenzara" a contarse de nuevo. Ello, conforme la teoría del demandante recurrente, tuvo la consecuencia de hacer "prematura" la carta de la demandada Oliver Exterminating, de fecha 2 de abril de 1984, prescindiendo de sus servicios por cuanto tenían la obligación de reservarle su empleo hasta septiembre de 1984.

*No* podemos refrendar dicha posición. En primer lugar, cuando "la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Véanse: *Irizarry v. Registrador*, 61 D.P.R. 74 (1942); *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743 (1952); *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101 (1964); *Rodríguez v. Fidelity Bond Mortg. Corp.*, 108 D.P.R. 156 (1978). Somos del criterio que estamos ante una de esas situaciones; esto es, la terminología en que está redactado el citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo es una clara y libre de ambigüedades. Ello nos obliga, no obstante el propósito reparador del estatuto en sí, a interpretar el mismo conforme al significado común y corriente de sus términos. Debe mantenerse presente que el texto claro de una ley es la expresión por excelencia de la intención legislativa. *Rodríguez Rodríguez v. Gobernador*, ante. Y es que, como expresáramos en *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 331 (1975), "[e]n aras de la liberalidad no podemos ir más allá de la ley".

En segundo lugar, la "interpretación" que propone el demandante recurrente es una que nos puede llevar a una situación insostenible. Si determináramos que un empleado que sufre un accidente del trabajo, que se ha reportado al Fondo y que, en consecuencia, se encuentra recibiendo tratamiento médico, puede interrumpir el término de un año prescrito en el citado Art. 5a *meramente* reportándose, aun cuando no haya sido "dado de alta"

por el Fondo, a trabajar por un corto período de tiempo, estaríamos *judicialmente enmendando* el citado Art. 5a y permitiendo que dicho término se pueda extender *ad infinitum*; esto es, estaríamos incurriendo en un ejercicio indebido de nuestra función judicial.

En el ejercicio de sus prerrogativas, el legislador entendió que el término de un año dispuesto en el Art. 5a, ante, hace justicia tanto a los intereses del patrono como a los del trabajador. Por un lado, como expresáramos anteriormente, se le proporciona una gran tranquilidad de espíritu al trabajador que sufre un accidente ocupacional; éste sabe que, *cumplidos ciertos requisitos*, su ausencia en el trabajo por un año no le priva de su derecho a ser reinstalado en el empleo. De otro lado, el patrono no soporta la carga, que sin duda puede ocasionar un disloque total de su actividad empresarial, de verse obligado por ley a congelar un sinnúmero de plazas por un período *irrazonablemente* largo de tiempo. Tal ha sido el juicio legislativo y no le corresponde a este Tribunal enmendar el mismo mediante un acto manifiesto de "legislación" judicial.

Somos del criterio, en consecuencia, que para que un empleado que se ha incapacitado temporalmente, por razón de enfermedad o accidente ocupacional, tenga derecho a ser repuesto en el empleo que desempeñaba al ser víctima del accidente del trabajo, éste viene obligado —en adición a cumplir con los demás requisitos que exige el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, ante— a requerir su reposición en o antes de que transcurra el período de un año, contado el mismo a partir de la fecha de la ocurrencia del accidente del trabajo.(3)

---

(3)  Distinta es la situación del empleado al que, luego de ser reinstalado por el patrono al empleo que desempeñaba antes de sufrir el accidente del trabajo —por razón de haberse recuperado del mismo, haber sido dado de alta por el Fondo del Seguro del Estado (Fondo) y haber solicitado en tiempo su reinstalación— le surge una condición relacionada con la del accidente anterior que *nuevamente* le inhabilita para realizar su trabajo.

En esta situación no hay duda que ese empleado tendrá el término (completo) de un año para solicitar nuevamente reposición a su empleo. Ello, no por razón de que el referido término haya sido "interrumpido", sino por el fundamento de que habiendo sido dado de alta por el Fondo y autorizado a regresar al trabajo, el incidente surgido se considera un

Por los fundamentos antes expuestos, es que concurrimos con el resultado de la sentencia emitida por el Tribunal, confirmatoria la misma de la dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, en el caso de epígrafe.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton.

Debido a que el Administrador del Fondo del Seguro del Estado concluyó que el aneurisma cerebral sufrido por el Sr. Juan Sifontes Ramos no era un accidente del trabajo, y de los autos originales no se desprende que después del accidente de noviembre de 1982 el peticionario recibió los servicios de la agencia, confirmaría el dictamen recurrido sin ulteriores pronunciamientos.

I

Para una mejor comprensión de la controversia ante nos, expongamos sucintamente los hechos según se desprenden del expediente y los autos originales del recurso.

El 19 de noviembre de 1982 el Sr. Juan Sifontes Ramos sufrió lo que eventualmente fuera diagnosticado como ruptura de un aneurisma arterial. Por motivo de esta lesión acudió a médicos privados en el Hospital Auxilio Mutuo, y el 3 de diciembre de ese año se sometió a una operación en el Hospital Presbiteriano de Nueva York. De los documentos que obran en autos no surge prueba acreditativa de que el empleado solicitó los servicios del Fondo del Seguro del Estado (en adelante Fondo) ni de que la agencia le ofreció tratamiento en esa etapa inicial de su lesión.

Una vez recuperado de la operación, el 1ro de febrero de 1983, el peticionario regresó a su empleo donde se desempeñaba como Gerente de la sucursal de San Juan y Gerente de Ventas de toda

nuevo accidente del trabajo aun cuando tenga relación con el original, esto es que haya "agravado" la lesión originalmente sufrida.

la isla para Oliver Exterminating Services Corporation (en adelante Oliver). Posteriormente, los galenos privados que lo atendían le recomendaron una segunda intervención quirúrgica para reparar un defecto osteoplástico de la región frontal izquierda del cráneo. Así las cosas, en septiembre de 1983 Sifontes Ramos viajó de nuevo a Estados Unidos a someterse a una segunda operación. Al regresar a Puerto Rico, solicitó que el Fondo le pagara los gastos en·que incurriría en una próxima visita a su médico privado en Estados Unidos.

Con motivo de esa petición, el *20 de diciembre de 1983*, el Administrador del Fondo del Seguro del Estado (en adelante Administrador) determinó que el aneurisma sufrido por Sifontes Ramos hacía trece (13) meses, el 19 de noviembre de 1982, *no fue un accidente del trabajo*. En su decisión el Administrador concluyó que "no existe el eslabón que une la incapacidad resultante con los hechos que sirvieron de base a la reclamación del peticionario. No hubo accidente o incidente alguno". Apéndice a Solicitud de revisión, pág. 58.

Además, sostuvo que los "aneurismas, especialmente de las arterias cerebrales, son condiciones congénitas cuya ruptura es espontánea y *nada* tienen que ver con el trabajo. La posible excepción pudiera ser un trauma en la cabeza, fuerte[, h]echo que aquí no ocurrió". (Énfasis suplido.) Apéndice a Solicitud de revisión, pág. 58.

A raíz de esta determinación del Administrador, Sifontes Ramos apeló ante la Comisión Industrial y hasta la fecha ese foro apelativo no ha resuelto la petición.

Cinco (5) meses después de la decisión del Administrador, y dieciocho (18) meses después de la lesión, el 10 de mayo de 1984 el peticionario incoó demanda sobre despido ilegal y daños y perjuicios contra Oliver; alegó que el 19 de noviembre de 1982 sufrió un accidente del trabajo y que su despido el 2 de abril de 1984 violó el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7.

Tras una solicitud de desestimación hecha por Oliver, el foro de instancia desestimó la demanda. De esa sentencia acude ante nos Sifontes Ramos.

## II

En primer lugar, coincidimos con el análisis procesal expuesto por la compañera Juez Asociada Señora Naveira de Rodón. Un examen riguroso de los autos revela claramente que el foro de instancia realmente resolvió la controversia, considerando que se estaba frente a una moción de sentencia sumaria y no a una moción de desestimación. Evidentemente, el tribunal de instancia actuó bajo la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y consideró materias no incluidas en las alegaciones impugnadas como si se tratara de una moción de sentencia sumaria. *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982). En su réplica a la moción, los peticionarios no cuestionaron la extensa prueba documental sometida por el patrono. Sus comparecencias reflejan que entendieron que la controversia era de derecho y no de hechos. *Torres Ponce v. Jiménez*, supra, pág. 62. Por último, al adjudicar sumariamente la controversia de autos, el foro de instancia tomó en consideración "los exhibits presentados en apoyo de dichos escritos y los argumentos presentados en la vista del 5 de marzo de 1985" (Apéndice, *Exhibit* A, pág. 3), y no habiendo controversia sustancial sobre hechos materiales resolvió las cuestiones de derecho a base de los documentos y no de las alegaciones. Aclarado estos extremos, examinemos la controversia ante nos.

El Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, impone la obligación a los patronos puertorriqueños de reservar el trabajo a sus empleados por un (1) año a partir del día en que éstos sufren un accidente del trabajo.(1)

---

(1) El Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, dispone:

"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o

En modo similar, la Sec. 3(q) de la Ley de Beneficios por Incapacidad de 1968 (11 L.P.R.A. sec. 203(q)) impone a los patronos la obligación de reservarle el trabajo a sus empleados durante seis (6) meses a partir del día en que éstos sufran un accidente no ocupacional.[2]

El Art. 5a, *supra*, otorga al obrero bajo tratamiento médico del Fondo un remedio adicional que le permite "instar y tramitar

empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones: (1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere *dado de alta*, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente; (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

"Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32." (Énfasis suplido.)

(2) "En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

"(1) que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos seis (6) meses desde la fecha de comienzo de la incapacidad;

"(2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición; y

"(3) que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de los treinta (30) días siguientes a la fecha en que se hizo el requerimiento de reposición.

"Si el patrono no cumpliera con las disposiciones de este inciso, vendrá obligado a pagar al trabajador o a sus beneficiarios los salarios que dicho trabajador hubiere devengado de haber sido reinstalado; además le responderá de todos los daños y perjuicios que le haya ocasionado. El trabajador o sus beneficiarios podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32.—Enmendada en Julio 26, 1979, Núm. 191, p. 558, art. 2, ef. Julio 26, 1979; Junio 3, 1985, Núm. 23, p. 78, ef. Julio 1, 1985; Junio 28, 1985, Núm. 38, p. 148, arts. 1 a 3, ef. Julio 1, 1985; Julio 1, 1988, Núm. 51, p. 256, art. 3, ef. Julio 1, 1988."

la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios . . .". 11 L.P.R.A. sec. 7. Este remedio es separado del procedimiento administrativo y del programa de beneficios concedidos por el Fondo, y su propósito principal es proteger al obrero contra un despido tras haberse acogido a los beneficios de la Ley de Compensaciones por Accidentes del Trabajo. Véase 2A *Larson's Workmen's Compensation Law* Sec. 68.36(a), pág. 13-167 (1990). Su protección dependerá de que la ausencia del obrero haya sido autorizada por el Fondo mediante una determinación preliminar de que el accidente lo inhabilita para trabajar. Para acogerse a los beneficios el obrero no solamente tiene que solicitar los servicios del Fondo, sino que también debe estar bajo tratamiento por la agencia hasta la fecha en que se le da de alta o se determine que no fue un accidente compensable.

Sin embargo, este derecho a incoar una reclamación judicial se activa únicamente cuando el Fondo o la Comisión Industrial ha determinado que el obrero ha sufrido un accidente del trabajo y, dentro del término de doce (12) meses desde la fecha de la lesión, la agencia oportunamente notifica al patrono que el empleado fue *"dado de alta"* del tratamiento por el accidente ocupacional que le impidió trabajar mientras recibía la asistencia del Fondo y se recuperaba de la lesión.

### III

En el caso de autos el señor Sifontes Ramos sufrió un accidente el 19 de noviembre de 1982. Del expediente no surge que durante el primer año de su enfermedad el peticionario se acogiese a los beneficios concedidos por el Fondo a los obreros con incapacidad transitoria provocada por un accidente del trabajo. Tampoco se desprende que durante ese período de doce (12) meses, contados a partir del accidente, un médico del Fondo determinara que estaba temporeramente incapacitado para trabajar ni que durante ese período recibiera pago alguno por

concepto de incapacidad transitoria. Véase Reglamento sobre Derechos de Obreros y Empleados Núm. 3966, Fondo del Seguro del Estado, 8 de agosto de 1989, Sec. 14.

Tampoco surge del expediente y ni hay prueba o alegación de que, durante los meses en que el peticionario regresara a su trabajo, el Fondo lo autorizara a trabajar o que se le hubiera dado de alta con derecho a tratamiento (CT). En otras palabras, de los autos de este caso no surge que el peticionario hubiese estado oficialmente bajo tratamiento por el Fondo por haber sufrido un accidente del trabajo. No fue sino hasta el décimo primer mes desde que ocurriera la lesión que el ejecutivo de ventas solicitó al Fondo la cobertura de los gastos en que incurriría el peticionario por viajar a Estados Unidos para una visita de seguimiento de una operación efectuada por cirujanos privados.[3]

En estas circunstancias, el peticionario no podía cumplir con el primer requisito del Art. 5a, *supra*: "que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere *dado de alta* . . .". (Énfasis suplido.) Como el Fondo concluyó que su enfermedad no era ocupacional, tampoco podía "darlo de alta" del tratamiento ofrecido a los obreros que han tenido un accidente del trabajo.

En vista de la determinación del Fondo de que la incapacidad de Sifontes Ramos se debió a una enfermedad que *no* estaba relacionada con el trabajo y de que el peticionario no recibió durante ese tiempo los servicios de la agencia, el patrono sólo venía obligado a reservar el trabajo del empleado por el término de seis (6) meses desde la fecha de comienzo de la incapacidad al amparo de la Sec. 3(q) de la Ley de Beneficios por Incapacidad, *supra*. Véase *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 52 (1984). Para el 2 de abril de 1984, fecha del despido alegadamente injustificado, el patrono ya no estaba obligado a reservar el

---

[3] En esta ocasión no solicitó el reembolso de los gastos en que incurriera con motivo del tratamiento que recibió de sus médicos privados en la primera o en la segunda operación.

empleo del señor Sifontes Ramos. El período de seis (6) meses, contados a partir de la fecha del accidente, expiró el 20 de mayo de 1983. Sólo hasta esa fecha el patrono estaba obligado por ley a reservarle su trabajo.

Como la revisión es de la sentencia y no de sus fundamentos —*El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983); *Collado v. E.L.A.*, 98 D.P.R. 111, 114 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776, 777 (1964)— en *correcta metodología adjudicativa lo que procede en derecho es confirmar el dictamen recurrido sin pronunciamientos adicionales. En estas circunstancias, cualquier interpretación sobre si el término de doce (12) meses del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, supra, puede ser interrumpido constituye un ejercicio académico con las características de una opinión consultiva, vedada por nuestro ordenamiento. E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958). Véase, también, *Hernández Agosto v. Betancourt*, 118 D.P.R. 79 (1986).

Sin embargo, aun asumiendo que en este caso la Comisión Industrial revocara la decisión del Administrador y decidiera que el aneurisma sufrido por Sifontes Ramos tenía origen ocupacional, esta determinación sólo tendría el efecto de permitir el reembolso de gastos médicos y dietas a que tiene derecho un obrero que sufre un accidente del trabajo. Como la decisión del Fondo fue emitida el 20 de diciembre de 1983, *ya para esta fecha había expirado el período de un (1) año durante el cual el patrono venía obligado a reservar el empleo de Sifontes Ramos.*

Bajo las normas prevalecientes de derecho administrativo, nada tiene que ver en nuestro curso decisorio el hecho de que la determinación del Fondo haya sido apelada a la Comisión Industrial. Extender el período de reserva de empleo hasta que la Comisión Industrial resuelva finalmente la apelación sería enmendar por fíat judicial el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*. Este artículo es claro en cuanto limita el período de reserva a un (1) año desde la fecha del

accidente, independientemente del curso administrativo que pueda tomar un caso.

Recordemos que una apelación ante la Comisión Industrial *no tiene el efecto de suspender o paralizar los efectos de una decisión del Administrador.* Su decisión de denegar los beneficios de la ley es final. Mientras se considera la apelación, esta determinación continúa en vigor. Por lo tanto, para efectos del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra,* al concluir el período de doce (12) meses de la lesión sin una decisión de la Comisión Industrial que revocara al Administrador, el peticionario no podía reclamar los beneficios de este remedio especial, concedido únicamente a los obreros que durante esos doce (12) meses estuvieran incapacitados temporeramente y bajo tratamiento por un accidente ocupacional.

Por otro lado, el peticionario ni alegó ni probó que el 29 de septiembre o el 26 de octubre de 1983 —días en que fue operado por segunda vez y en que padeciera una subida de presión sanguínea, respectivamente— hubiera sufrido un nuevo accidente ocupacional o un accidente intercurrente, *Admor., F.S.E. v. Comisión Industrial,* 100 D.P.R. 363, 365 (1972); *Vélez, Admor. v. Comisión Industrial,* 91 D.P.R. 480 (1964), o uno que agravara una condición preexistente, 11 L.P.R.A. sec. 3. En estos casos, el peticionario tenía el derecho a que el Fondo determinara si estos incidentes eran accidentes ocupacionales. De sus alegaciones se desprende que, en el caso del peticionario, la segunda lesión tenía las características de una recidiva, y habiéndose determinado que el primer accidente era no ocupacional, la segunda intervención no era compensable. Por lo tanto, estas lesiones adicionales tampoco lo hacían acreedor a los beneficios concedidos por el citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo.

Por las razones expuestas anteriormente, concurro.

—O—

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón.

Por no estar de acuerdo con la posición adoptada por la mayoría, disentimos. Veamos cuáles son los hechos procesales en este caso, según estos surgen de los autos originales.

El 7 de agosto de 1984 la demandada recurrida Oliver Exterminating Services Corporation (en adelante Oliver) presentó una moción titulada "Solicitud de Desestimación y Paralización de Procedimientos". Alegó que la demanda dejaba de exponer una reclamación que justificase la concesión de un remedio a favor de la parte demandante y que, por lo tanto, procedía en derecho que se desestimara. Esta moción la acompañó con seis (6) *exhibit*: (a) una (1) declaración jurada de 3 de agosto de 1984 del Sr. Raúl Ferrer Colón, Vicepresidente de Oliver; (b) dos (2) certificaciones médicas del Dr. Juan Luis Duquela; (c) una (1) carta del Sr. David Oliver, Presidente de Oliver, al demandante Sifontes Ramos de 2 de abril de 1984, y (d) dos (2) consultas del Departamento del Trabajo y Recursos Humanos (Consulta Núm. 11056 y Consulta Núm. 10995).

A tenor con lo dispuesto en la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, cuando en una moción de desestimación fundada en que la reclamación no justifica la concesión de un remedio se expusieren materias no contenidas en la demanda, y éstas no fueren excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites posteriores provistos en la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, hasta su solución final. Todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a dicha moción bajo la citada Regla 36.

Cuando se presenta una moción de esta naturaleza se le conoce como *speaking motion to dismiss* o *speaking demurrer*. Nuestra Regla 10.2 de Procedimiento Civil, *supra*, transforma este tipo de moción de desestimación "en lo que verdaderamente

es: una moción sobre sentencia sumaria; y dispone que sea considerada como si fuera tal". R. Hernández Colón, *Manual de Derecho Procesal Civil*, 2da ed., Hato Rey, Ed. Equity, 1981, Sec. 2602, pág. 195. Véanse: *Torres Ponce v. Jiménez*, 113 D.P.R. 58, 61–62 (1982); 5A *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1364 (1990); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Civil*, San Juan, Pubs. J.T.S., 1979, Vol. II, págs. 187–188.

Sobre la moción de sentencia sumaria se ha dicho lo siguiente:

A summary judgment motion is often said to "pierce the pleadings:" it says in effect "granted that you have *alleged* a state of facts upon which you might win, I can *prove* that no such facts exist. Here are the facts and there is no conflict as to them, so trial is unnecessary. The legal consequences of these facts is that I win." R. Brousseau, *Civil Procedure*, Nueva York, Ed. Mathew Bender, 1982, pág. 10-42.

Ahora bien, nuestra Regla 10.2 de Procedimiento Civil, *supra*, proviene de la Regla 12(b) de Procedimiento Civil federal. Con relación a la regla federal, los comentaristas Wright y Miller han expresado lo siguiente:

A wide range of material may be introduced in conjunction with a Rule 12(b) motion, subject, of course, to the court's discretion to reject the evidence if it feels that it is not substantial or comprehensive enough to facilitate the disposition of the action. Illustrative of the type of evidence that has been used on a Rule 12(b)(6) motion are the following: admissions of counsel, affidavits, answers to interrogatories, collective bargaining agreements, contracts, copyrighted material, depositions, exhibits, hearsay, issues of a magazine, court judgments and orders, judicial notice of prior pleadings, leases, letters, oral arguments, prior pleadings, transcripts of prior court proceedings, and matters of public record. Memoranda and briefs also may be submitted to support or oppose a Rule 12(b) motion, although their content probably does not qualify as evidence. (Escolios omitidos.) *Wright and Miller*, supra, págs. 475–481.

Cabe señalar que "[l]os memoriales de derecho no se consideran materias exógenas a las alegaciones . . . pero sí lo consti-

tuyen documentos y apéndices que las partes presenten". Cuevas Segarra, *op. cit.*, Cap. V, pág. 187.

No habiendo el tribunal de instancia excluido la materia nueva incluida con la moción presentada por Oliver, al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, la jurisprudencia interpretativa de la misma y lo expresado por los comentaristas, no cabe duda que ésta tenía que ser considerada como una moción de sentencia sumaria.[1] Esto quiere decir que el tribunal tenía que resolverla a base de los documentos, no a base de las alegaciones. James and Hazard, *Civil Procedure*, 2da ed., Boston, Ed. Little, Brown & Co., 1977, Sec. 4.14, pág. 149.

Habiendo establecido que estamos frente a una moción de sentencia sumaria, resulta necesario examinar con gran detenimiento, además de los *exhibit* que se acompañaron con la moción, todos los documentos que se presentaron con las distintas mociones relacionadas con la solicitud de desestimación y cualesquiera otros que obraren en autos.[2] Veamos.

---

[1] Con relación a la aseveración que hizo Oliver Exterminating Services Corporation (en adelante Oliver) en la moción para solicitar desestimación de que "[p]ara los solos propósitos del presente escrito, se asume la veracidad de lo alegado en la demanda" (Apéndice, *Exhibit* I, pág. 22), resulta claro que esto no obliga al tribunal. Además, el propio Oliver en una nota al calce relacionada con esta aseveración indica lo siguiente: "Para los solos propósitos de este escrito se asume la veracidad de la alegación de la parte demandante a los efectos de que el demandante, Juan Sifontes Ramos, sufrió un accidente del trabajo. *Para cualquier otro propósito*, la demandada niega que el señor Sifontes Ramos, haya sufrido un accidente del trabajo o una enfermedad ocupacional; por el contrario, es la posición de la demandada que el demandante, Juan Sifontes Ramos, lo que sufrió en este caso fue una enfermedad *no ocupacional*." (Énfasis suplido.) Apéndice, *Exhibit* I, págs. 22 y 23 n. 1.

[2] El tribunal de instancia, al resolver dicha moción, parece haber mezclado los conceptos de la "moción de desestimación" y los de la "moción de sentencia sumaria". En la Sentencia expresó lo siguiente:

"Examinadas las alegaciones de las partes, la solicitud de desestimación y paralización de procedimientos presentada por la parte demandada, la oposición presentada por la parte demandante, las mociones suplementarias presentadas posteriormente por ambas partes, los exhibits presentados en apoyo de dichos escritos y los argumentos presentados en la vista del 5 de marzo de 1985, *resolvemos que no existe controversia real sustancial sobre lo siguiente*." (Énfasis suplido.)

Al así expresarse, parece estar acogiendo la moción presentada como una de sentencia sumaria. Sin embargo, cuando vamos a la parte de las determinaciones de hecho de la Sentencia, encontramos que muchas de dichas determinaciones se refieren exclusivamente al contenido de las alegaciones. Los hechos, o no se encuentran apoyados por documentos o han sido puestos en controversia por documentos que sí aparecen en autos.

Con la contestación a la demanda, Oliver acompañó la decisión del Administrador del Fondo del Seguro del Estado (Administrador) de 20 de diciembre de 1983, relacionada con el accidente sufrido por el demandante Sifontes Ramos el 19 de noviembre de 1982, Caso Núm. 83-64-02089. A la oposición a la moción de desestimación, Sifontes Ramos unió una carta de 29 de octubre de 1983 que él le enviara a Oliver, relacionada ésta con un incidente que ocurrió cuando, según él, trató de regresar a su trabajo luego de la segunda operación.

El 27 de diciembre de 1984 el foro de instancia concedió la desestimación. El 8 de enero de 1985 el demandante Sifontes Ramos presentó una moción de reconsideración la cual acompañó con los siguientes nuevos documentos: (a) una (1) carta fechada 6 de junio de 1984 del Dr. Modesto Fontánez González dirigida al demandante Sifontes Ramos relacionada con el aneurisma que sufrió Sifontes Ramos; (b) notificación de vista pública ante la Comisión Industrial para el 11 de marzo de 1985 sobre relación causal en el Caso Núm. 83-64-02089, y (c) una (1) declaración jurada del demandante Sifontes Ramos de 4 de enero de 1985.

A continuación resumiremos los hechos que surgen incontrovertiblemente de los documentos presentados por las partes que obran en los autos originales del caso y señalaremos los que sí se pusieron en controversia.

El 19 de noviembre de 1982 el demandante Sifontes Ramos sufrió un fuerte dolor de cabeza a consecuencia del cual fue llevado de emergencia al Hospital Auxilio Mutuo. De allí lo refirieron a Estados Unidos, donde el 23 de diciembre de 1982 fue operado en Nueva York de un aneurisma cerebral.[3] Sifontes Ramos tuvo que ausentarse de su trabajo desde "[e]l día 19 de noviembre de 1982 hasta el 1ro de febrero . . . ese tiempo se [le] consideró parte del tiempo como vacaciones acumuladas".[4]

---

[3] Decisión del Fondo del Seguro del Estado de 20 de diciembre de 1983 y carta del doctor Fontánez al demandante Sifontes de 6 de julio de 1984. Apéndice, *Exhibit* A, pág. 56.

[4] Declaración jurada del demandante Sifontes Ramos de 28 de noviembre de 1986. Apéndice, *Exhibit* R, pág. 87.

Luego de esta intervención quirúrgica, Sifontes Ramos regresó a trabajar desde el 1ro de febrero de 1983 hasta el 26 de septiembre de ese mismo año.(5)

Sifontes Ramos tuvo que someterse a una segunda intervención quirúrgica (*due to bone flap difficulty cranioplasty*). En cuanto a la fecha en que se efectuó esta operación, no la podemos precisar con certeza, pues en distintos documentos aparecen diferentes fechas. Sí se puede colegir que ocurrió después del 26 de septiembre de 1983 y antes de diciembre del mismo año.(6)

Sifontes Ramos le informó a Oliver que esta segunda intervención era necesaria para resolver varios problemas médicos resultantes de su enfermedad y de la primera operación.(7)

El 14 de octubre de 1983, Sifontes Ramos le envió una comunicación al Director Médico del Dispensario Regional mediante la cual le solicitaba autorización para que el Fondo del Seguro del Estado (el Fondo) cubriera los gastos de su próximo viaje a Estados Unidos a fines de noviembre o principio de diciembre. El propósito de este viaje era hacerse un examen médico postoperatorio. El Fondo denegó la solicitud por estar estos servicios disponibles en Puerto Rico. Con relación a lo que ocurrió en noviembre de 1982, el Fondo determinó que no hubo relación causal entre el incidente y el trabajo.(8) De esta decisión Sifontes Ramos apeló a la Comisión Industrial y esta apelación

---

(5) Declaraciones juradas del Vicepresidente de Oliver y del demandante Sifontes Ramos.

(6) Carta de 6 de junio de 1984 del doctor Fontánez, Decisión del Fondo del Seguro del Estado y carta del demandante Sifontes Ramos a Oliver de 29 de octubre de 1983.

(7) Declaración jurada del Vicepresidente de Oliver.

(8) Decisión del Fondo del Seguro del Estado de 20 de diciembre de 1983.

A pesar de la determinación del Fondo de que el supuesto accidente no estaba relacionado, en autos obran documentos de los cuales se podría concluir lo contrario; o sea, este hecho se puso en controversia. Veamos. En la carta que el doctor Fontánez le envía a Sifontes Ramos, éste expresa que Sifontes Ramos le indicó lo siguiente: "At work in the morning of november 1982, [Sifontes], after a heated discussion with directors of the firm where he worked, subsequently developed persistently severe headaches which did not improve with analgesics and by evening of that day they were excru[c]iating." Sobre la aneurisma en particular, indicó esto: "It is certain that cerebral aneurysms are congenital in nature, although recent literature is starting to contest this concept. It is highly probable that as a result of [Sifonte's] discussion he underwent intracranial hemodynamic

aún se encuentra pendiente.(9) El 2 de abril de 1984 Oliver le envió una carta a Sifontes Ramos en la cual le indicaba que ya no podía retener su empleo.(10)

De los documentos surge que existe controversia sobre si Sifontes Ramos trató o no de reincorporarse a su trabajo el 26 de octubre de 1983. En la declaración jurada que prestara el 4 de enero de 1985, Sifontes Ramos indica que se reincorporó a trabajar el 26 de octubre de 1983, pero que fue informado por un ejecutivo de Oliver que sólo trabajaría hasta el 28 de octubre de 1983, fecha en la cual sería separado de la empresa. La misma versión la ofreció en la carta de 29 de octubre de 1983 que Sifontes Ramos le envió a Oliver. De otra parte, en la declaración jurada del Vicepresidente de Oliver de 3 de agosto de 1984, éste expresó que luego de ausentarse el 26 de septiembre de 1983 Sifontes Ramos no regresó a su trabajo con la empresa.

En los autos no existe documento alguno que avale la contención de que Sifontes Ramos fuese atendido en algún momento, después del primer o segundo accidente, por el Fondo. Claro está, como corolario de esto, tampoco existe documento alguno que sustente el hecho de que Sifontes Ramos fue dado de alta del Fondo.

Al analizar todo lo antes reseñado, debemos tomar en consideración, como principio cardinal que guíe la actuación del tribunal, que la sentencia sumaria tiene como objetivo conseguir la terminación de un pleito sin la celebración de un juicio. *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990). Por lo tanto, al resolver una moción, el tribunal no puede dirimir credibilidad; tiene que presumir que son ciertos todos los hechos no controvertidos que se hacen constar en los documentos y las declaraciones juradas admisibles en evidencia, y tiene que verlos de la forma más favorable para la parte que se opone a la moción,

---

changes including a possible rise in blood pressure leading to his aneurysmal rupture. So that the possibility of an aggravated situation is highly probable."

Claro está, de confirmarse la determinación del Fondo y advenir éste a ser final y firme, dicha determinación no podría ser atacada colateralmente; sería *res judicata.*

(9) Notificación sobre vista pública ante la Comisión Industrial.

(10) Carta de 2 de abril de 1984.

concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. El tribunal, además, debe tener en cuenta que, por ser la sentencia sumaria un remedio extraordinario, *sólo debe ser concedido cuando el promovente ha establecido su derecho con que reclama bajo cualquier circunstancia que resulte discernible de los hechos no controvertidos o de las alegaciones no refutadas con evidencia.* La norma es que la sentencia sumaria sólo se dictará cuando el tribunal esté convencido de que tiene ante sí la verdad de todos los hechos materiales sustanciales y que, por lo tanto, una vista evidenciaria no es necesaria. Procesalmente no se amerita un juicio plenario. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986); *Nassar Rizek v. Hernández,* 123 D.P.R. 360 (1989).

Un análisis integral de los documentos sometidos con las distintas mociones relacionadas con la solicitud de desestimación de la demanda refleja que el demandante Sifontes Ramos puso en controversia una serie de hechos materiales sustanciales. Mediante la declaración jurada suscrita por Sifontes Ramos el 4 de enero de 1985 y la comunicación que le enviara éste a Oliver el 29 de octubre de 1983, puso en controversia el hecho de que "[d]urante el período comprendido entre la fecha en que el demandante se ausentó de su empleo para someterse a su segunda intervención quirúrgica, el 29 de septiembre de 1983, y el 2 de abril de 1984, fecha en que la demandante le imputa a la demandada haberle despedido, el [señor] Sifontes [Ramos] no regresó a su trabajo con Oliver Exterminating" (Determinación de Hechos Núm. 6 de la Sentencia, Apéndice 1, *Exhibit* A, pág. 5) y el hecho de que esta ausencia se debió, exclusivamente, a la segunda intervención quirúrgica que sufriera Sifontes Ramos.

Mediante estos documentos, Sifontes Ramos también trajo a colación que la continuada ausencia durante este segundo período se debió al mal rato que pasó al regresar al trabajo el 26 de octubre de 1983. Al estar en controversia estos hechos, también se pone en controversia la conclusión esencial para la desestimación de la demanda de que el despido ocurrido en abril de 1984 no fue injustificado. Despúes de todo, si el mal rato que pasó Sifontes

Ramos al reincorporarse a su trabajo agravó una condición preexistente, podríamos estar ante un segundo accidente aparentemente relacionado con el trabajo. Si la actuación del patrono fue la que provocó la agravación de una condición preexistente y esto fue lo que le impidió a Sifontes Ramos reincorporarse a sus labores en octubre, podríamos estar ante un accidente laboral independiente del que originó la ausencia inicial de Sifontes Ramos en noviembre de 1982. 11 L.P.R.A. sec. 3; *Admor., F.S.E. v. Comisión Industrial,* 100 D.P.R. 363, 367 (1972).

Claro está, para cualificar para los beneficios que dispone el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7, Sifontes Ramos tendría que probar, al devolverse el caso al foro de instancia, que efectivamente se trataba de un accidente del trabajo; o sea, la agravación de una condición preexistente causada por el patrono y que estaba bajo el Fondo al ser cesanteado. Si logra probar esto, habría que concluir que el despido de Sifontes Ramos en abril de 1984 fue prematuro.(11)

Por lo tanto, estando hechos reales, materiales y sustanciales en controversia, no procedía dictar sentencia sumaria que desestimara la demanda. *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra; *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117 (1990); *Cuadrado Lugo v. Santiago Rodríguez,* supra.

Por todo lo antes expuesto, procedería revocar la sentencia recurrida y devolver el caso al foro de instancia para que continúen los procedimientos.

---

(11) Con relación a la consideración de hechos que aparece en los documentos pero no constan en las alegaciones, Moore nos dice:

"Affidavits going beyond the pleadings may be considered if facts appear in the affidavits which would justify an amendment." 6 *Moore's Federal Practice* Sec. 5611[3] págs. 56–132 (1991).

Wright y Miller nos indican que:

"[The judge] may evaluate the pleadings both in terms of their content at the time of their submission and as they might be amended at some later date." 5a *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1364 (1990).

En la nota al calce Núm. 5 relacionada con esta cita, incluye, del caso *Seaboard Terminal Corporation v. Standard Oil Co.,* 104 F.2d 659 (1939), lo siguiente:

"On motion for summary judgment, if facts appear in the affidavits which would justify an amended complaint, there may be ground for treating the complaint as though it were already amended . . . ."