The PLAZA RESORT AT PALMAS, INC., Debtor.

Scotiabank De Puerto Rico, Plaintiff–Appellant,

v.

Ernesto Brito, Marigloria Del Valle, David Nieto Carrero, Lizette Vargas Valle, Leticia Flores Berganzo, Francisco Sierra Méndez, María Rodríguez De Sierra, Cruz A. Torres Colón, Paulita Colón Flores, Joseph Burgos, Gilda Cruz, Noreen Ortiz, Claudio Medina, María Romero, Eliselina Rosario, and Rafael Almodóvar, Defendants–Appellees.

BAP No. PR 11–055.
Bankruptcy No. 09–09980–BKT.
Adversary No. 10–00175–BKT.

United States Bankruptcy Appellate Panel of the First Circuit.

April 25, 2012.

Briseida Y. Delgado Miranda, Esq., on brief for Appellant.

Bufete Gerardo Pavia, Esq., on brief for Appellees Ernesto Brito and Marigloria del Valle.

Before HAINES, HILLMAN, and BOROFF, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Before us is the appeal of Scotiabank de Puerto Rico ("Scotiabank") from the bankruptcy court judgment dismissing its complaint seeking a declaratory judgment that numerous timeshare owners are general unsecured creditors. For the reasons set forth below, we **AFFIRM** the judgment of the bankruptcy court.

## BACKGROUND

### I. Pre–Petition Events

In June 2001, The Plaza Resort at Palmas, Inc. ("the Debtor") established a timeshare regime on property located in Humacao, Puerto Rico ("the Property"). On the same date, it also granted a first mortgage on the Property ("Deed 9") to The Bank and Trust of Puerto Rico,[1] to secure payment of a loan to develop the timeshare regime.[2] At the heart of this controversy is the subordination provision set forth in Paragraph 18 of Deed 9 ("the subordination clause"), which provided:

> EIGHTEENTH: *Subordination.* The MORTGAGEE, without payment, hereby agrees to subordinate the lien created hereby in favor of the personal ownership interest of each owner of an accommodations [sic] or timeshare despite any rejection or cancellation of any such owner's purchase contract with the MORTGAGOR, as a result of any bankruptcy proceedings with respect to MORTGAGOR, so long as such owner remains in good standing with respect to his/her obligations under the timeshare plan documents, including, but not limited to, paying all assessments levied upon his/her accommodation or timeshare. This subordination shall bind all successors and assigns of the MORTGAGOR and MORTGAGEE and any other person

---

1. R–G Premier Bank of Puerto Rico succeeded The Bank and Trust of Puerto Rico, and Scotiabank is now its successor in interest and the holder of the first mortgage on the Property.

2. The Debtor's Disclosure Statement reveals that "[p]rior to January 1, 2006, [the] Debtor entered into a Credit Agreement with [R–G] in which [R–G] approved certain credit facilities consisting of a term loan facility for $6,421,441.00 and a capital improvement facility for $948,000.00 . . . ."

who acquired the Property through foreclosure, by deed in lieu of foreclosure or by any other legal means, irrespective of whether the accommodation or timeshare is of the type coupled with a special property right or not. This subordination shall apply only to those persons who [own] or co-own a timeshare or accommodation which have been sold in the ordinary course of Mortgagor's business pursuant to the terms and conditions of the Senior Secured Term Loan Agreement. For purposes of this clause the Mortgagor's unsold timeshares and accommodations shall not be deemed to be included in the subordination.

In July 2001, the Debtor issued a Public Offering Statement ("the OS") regarding the timeshare regime, which stated, in pertinent part:

The Units and Timeshare Interests being offered by the Developer are subject to the provisions of [T]he Puerto Rico Timeshare [and Vacation Club] Act.[3] Owners are entitled to the protective measures afforded by [T]he Puerto Rico Timeshare [and Vacation Club] Act to purchasers of Timeshare Interests.

The OS also provided:

c. Status of Title to Underlying Real Property. Title to the real property underlying the Plaza Resort is subject to the following:

(i) *Encumbrances.* There will be two mortgages encumbering the real property underlying the Plaza Resort. The holder of the first mortgage is the bank that financed the acquisition by the Developer of the real property (including the existing building, parking and related facilities) that was dedicated by the Developer to the timeshare regime to create the Plaza Resort. The holder of the second mortgage is the entity that sold the real property (including the existing building, parking and related facilities) that was dedicated by the Developer to the timeshare regime. The holders of these mortgages, as required by the Puerto Rico Timeshare Act, have subordinated the mortgages to the rights of the Owners and the rights of the owner of any Unit in the Plaza Resort.

In the OS, "Purchaser" was defined as a "prospective Owner," and "Owner" as "the owner of a Timeshare Interest at the Plaza Resort." "Timeshare Interest or Unit Week" meant

the timeshare contractual ownership interest in the Plaza Resort owned by the Owner, which timeshare contractual ownership interest gives the Owner the exclusive use and occupancy of a[sic] either a Fixed Week or a Floating Week within a specific Unit at the Plaza Resort in perpetuity.

Additionally, a "Unit" meant "an accommodation of the Plaza Resort which is subject to ownership by one or more persons pursuant to the Plaza Resort Documents."

In June 2002, Ernesto Brito and Marigloria del Valle (collectively "Brito and del Valle") executed an unrecorded purchase contract ("the Purchase Contract") together, whereby they purchased a timeshare Unit Week for the sum of $18,200.00. The Purchase Contract provided that Brito and del Valle purchased the Unit Week to "hold for an indefinite time," "free and clear of all encumbrances," except taxes and assessments.

## II. Post–Petition Events

Unable to sell a sufficient number of timeshare unit weeks, the Debtor filed a

---

**3.** The Puerto Rico Timeshare and Vacation Club Act ("The Timeshare Act") is codified in P.R. Laws Ann. tit. 31, § 1251, *et seq.*

voluntary petition for chapter 11 relief in November 2009. On its Schedule D, it listed numerous timeshare owners as secured creditors, including: Brito and del Valle, Claudio Medina ("Medina"), and Maria Romero ("Romero") (collectively "the Creditors"); Perimetro, Inc. ("Perimetro"), the corporate owner of over one hundred timeshare units; and R–G. The Creditors filed proofs of claim, asserting their secured status as owners of timeshare rights. Brito and del Valle appended the Purchase Contract as an exhibit to their proof of claim, and indicated that their claim was secured by real estate worth $18,200.00.

R–G also filed a proof of secured claim, which it subsequently transferred to Scotiabank. In addition to its proof of claim, R–G filed an objection to Schedule D, asserting that the timeshare owners did not hold secured claims and requesting an order directing the Debtor to remove them from Schedule D.[4]

In November 2010, while the objection was pending as a contested matter ("the contested matter"), Scotiabank, as R–G's successor-in-interest, commenced an adversary proceeding against the individual timeshare owners.[5] In its complaint, Scotiabank sought a declaratory judgment under § 506,[6] as well as provisions of The Timeshare Act, that the defendant time-share owners did not possess valid liens. The Creditors filed answers to the complaint, in which they objected to the entry of a declaratory judgment. Additionally, Brito and del Valle asserted an affirmative defense, alleging that Scotiabank's mortgage was subordinate to their ownership interest, pursuant to the terms of Deed 9 and the OS.

In February 2011, Scotiabank filed a motion for summary judgment ("the summary judgment motion") against the Creditors, arguing chiefly that the subordination clause "did not confer secured status to timeshare owners." In its accompanying memorandum of law, Scotiabank further asserted that pursuant to § 1254(1)(a) of The Timeshare Act,[7] the subordination clause merely required the secured lender to "honor the personal rights of timeshare owners to enjoy the facilities" in the event of foreclosure. Additionally, Scotiabank argued that § 506 requires a "lien" on property of the estate for secured status, and that under Puerto Rico law, a valid lien requires recordation in the Registry of Property. According to Scotiabank, in the absence of recordation, the Creditors held, at best, unsecured claims against the Debtor. Thus, Scotiabank requested an order disallowing the Creditors' claims as secured, and allowing them only as general, unsecured claims.

---

4. Ultimately, the bankruptcy court overruled the objection.

5. The bankruptcy court docket reflects that Scotiabank commenced a separate adversary proceeding against Perimetro in November 2011, in order to determine the validity, priority, or extent of its lien or interest in the Property.

6. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.

7. Section 1254(1)(a)(ii) of The Timeshare Act provides, in pertinent part, as follows with respect to lien holder subordination:

> [S]o long as an owner remains in good standing with respect to his obligations under the timeshare plan ..., the lien [ ]holder will honor all rights of such owner relating to the subject accommodation or facility as granted by the timeshare or vacation club documents.....

P.R. Laws Ann. tit. 31, § 1254(1)(a)(ii).

Brito and del Valle filed an opposition to the summary judgment motion, which opposition included a cross-motion for summary judgment seeking confirmation of their secured status ("the cross-motion").[8] They argued that as a "protected accommodation" within the meaning of the Timeshare Act,[9] their Unit Week was free and clear of all liens and encumbrances. Furthermore, according to Brito and del Valle, Deed 9 expressly provided that Scotiabank's lien was subordinated to their ownership interest.

In its reply to the cross-motion, Scotiabank maintained that the classification of the timeshares as "protected accommodations" failed to confer secured status. Such status, Scotiabank contended, only meant that they were protected by a subordination agreement, and a subordination agreement only meant that the timeshare owners were entitled to "enjoy the facilities" in the event of foreclosure.

The bankruptcy court entered judgment, without a hearing, denying the summary judgment motion and granting the cross-motion on May 4, 2011.[10] In its accompanying opinion issued the same day ("the May 2011 Opinion"), the court acknowledged at the outset the fundamental principle that "[t]he Laws of Puerto Rico regarding Timeshares and Vacation Clubs were enacted in 1995 with the express purpose of recognizing the importance of the sale and promotion of timeshare plans

and vacation clubs." Thus, Puerto Rico's Civil "Code provides for the use of subordination agreements which shall ... provide that '[t]he lien[ ]holder's right, lien or encumbrance upon the applicable accommodation, facility, timeshares or vacation club rights shall not adversely affect, and shall be subordinate to, the rights of any owners of timeshares....'" The bankruptcy court concluded that:

In the present case, all of the conditions for subordination of Scotiabank's lien have been satisfied. The timeshare or vacation club regime was established by public instrument and recorded in the Registry of Property. While the law provides for a right to use conveyance or an alienation of a special property right, *the issue is not whether the purchasers obtained a security interest by virtue of their agreements with Plaza Resorts or by operation of law. Their interest is protected by the Civil Code and by virtue of the subordination agreement itself.*

The Civil Code provides that the lien[ ]holder's encumbrance is subordinated to the rights of the purchasers from the effective date of purchase, whether through recordation or otherwise. 31 L.P.R.A. § 1251 [b(37)(a) ]. In conjunction, the subordination agreement, which binds all successors and assigns, specifically states that the mortgagee agrees to subordinate its

---

**8.** Medina and Romero did not respond to the summary judgment motion.

**9.** The Timeshare Act specifically provides, in pertinent part:
(29) *Protected Accommodation.* Means an accommodation of a timeshare plan or vacation club:
(a) Which is owned, free and clear of the claims of any lien[ ]holder, by one or more owners of accommodations, timeshares or vacation club rights, or
(b) with respect to which the developer has executed or procured a subordination

agreement, release or provided or established a financial assurance in compliance with §§ 1254–1254b of this title in order to guarantee the continuing availability of such accommodation for use and occupancy by the owners of timeshares or vacation club rights or by the corresponding owners of accommodations.
P.R. Laws Ann. tit. 31, § 1251b(29).

**10.** The judgment was silent as to Medina and Romero.

mortgage lien in favor of the personal ownership interest of each owner of [an] accommodation or time share [sic] and clearly states that the lien is subordinated irrespective of whether the accommodation or time share [sic] is of the type coupled with a special property right or not. The subordination agreement is effective as between Scotiabank and the purchasers, so long as they remain in good standing. 31 L.P.R.A. § 1254[ (1) ](a)(ii). And while Scotiabank concentrates its argument on honoring the rights of the purchasers to use and occupancy, that is only a fraction of what the subordination agreement granted.

The Court also notes that it is clear from the documents, taken as a whole, that Plaza Resort intended to transfer interests in real property to the purchasers and that the purchasers intended to acquire an interest in real property. The purchase contracts clearly evince a sale of the timeshare interests, with title to the unit weeks being free and clear of all encumbrances except taxes and assessments. Title was also transferred in perpetuity, unlike a right to use interest that grants a contractual right to use a vacation facility for a specified number of years. And while the original first mortgage holder was not the issuer of the public offering statement nor the purchase contracts, the lender had to have been aware of the contents, with the public offering statement issued one month after the mortgage was executed. The purchase contracts did not take the form of public deeds nor were they presented for recordation in the Registry of Property, but "we must remember the general principle that the registry does not give or take away rights." *P.R. Prod. Credit Assoc. v. Registrador,* 123 D.P.R. 231, 23 P.R. Offic. Trans. 213 ( [P.R.] 1989). These documents define the ownership interest of the purchasers; an interest that was acquired through the execution of a private document. *See Segarra v. Vda. de Llorens,* 99 D.P.R. 60 (P.R. 1970).

For these reasons, the Court concludes that the Laws of Puerto Rico regarding Timeshares and Vacation Clubs and the subordination agreement included in Deed of Mortgage No. 9, safeguard these purchasers and that Scotiabank's lien is subordinated to their ownership interests.

(emphasis added).

After Scotiabank filed a motion for final judgment and a Rule 54(b) certification, on July 20, 2011, the bankruptcy court entered a Final Judgment ("the Judgment") which stated: "Judgment is hereby entered in favor of all remaining defendants and the complaint dismissed for the reasons stated in the Decision and Order of even date [ ('the July 20 Opinion') ], which is incorporated and made part of this judgment." In the July 20 Opinion, the court vacated all of the defaults previously entered, reasoning that: (1) "a default is not an absolute confession of liability;" and (2) it had already determined in the May 2011 Opinion that "Scotiabank's lien [was] subordinated to the ownership interests of all defendants." The court also noted:

> This is an unusual case in that Scotiabank, while denying that the defendants have an ownership interest or secured claims against the time-share units, admits that the defendants have the right to use and occupancy in perpetuity. The [D]ebtor[']s plan of reorganization, however, is premised on the purchase and reconstruction of the [D]ebtor's realty into a 51–room hotel for medical tourism which will preclude the defendants from having any rights against the property, if it is determined on appeal that Scotiabank's lien is not subor-

dinated to the ownership interests of the defendants or in the concurrent appeal, that their claims are not secured. Moreover, the Court has already entered judgment in favor of two of the defendants. Under these circumstances, the Court concludes that not only can default judgment not enter against the remaining defendants, as the Court has already rejected the allegations of the complaint, but that all defendants are entitled to judgment as a matter of law. Any other result would indefinitely delay final resolution of this adversary proceeding and hamper the [D]ebtor's reorganization efforts.

Scotiabank subsequently filed a notice of appeal, in which it indicated that it was appealing "from the final judgment ... entered in this adversary proceeding on the 20th day of July 2011, vacating all defaults and dismissing the complaint filed by Scotiabank...."

## JURISDICTION

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 726 (1st Cir. BAP 1998). A panel "may hear appeals from final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ], or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). "[T]he First Circuit has held that a final, appealable judgment results whenever a district court dismisses a complaint without expressly granting the plaintiff leave to amend the complaint." *Dugan v. Wyvern Aviation Consulting Ltd. (In re FightTime Corp.),* 302 B.R. 114, 116–17 (1st Cir. BAP 2003) (citing

*Acevedo–Villalobos v. Hernandez,* 22 F.3d 384, 389 (1st Cir.1994)). Here, the bankruptcy court did not expressly grant leave to Scotiabank to amend when it dismissed the complaint. Accordingly, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. See Lessard v. Wilton–Lyndeborough Coop. School Dist.,* 592 F.3d 267, 269 (1st Cir.2010). "A finding is clearly erroneous when, after careful review, the reviewing court is left with the definite impression that a mistake has been made." *Riley v. Nat'l Lumber Co. (In re Reale),* 584 F.3d 27, 30 (1st Cir.2009) (citation omitted). *De novo* review means that "the appellate court is not bound by the bankruptcy court's view of the law." *Kagan v. López–Stubbe (In re El San Juan Hotel Corp.),* 239 B.R. 635, 645 (1st Cir. BAP 1999), *aff'd,* 230 F.3d 1347 (1st Cir.2000) (citation omitted). The First Circuit applies a *de novo* standard of review to the dismissal of a complaint. *See Banco Santander de Puerto Rico v. López–Stubbe (In re Colonial Mtg. Bankers Corp.),* 324 F.3d 12, 15 (1st Cir.2003).

## POSITIONS OF THE PARTIES

On appeal, Scotiabank acknowledges the "protected accommodation" status of the timeshares, and concedes that its lien is subordinated to the interests of the timeshare owners. It maintains, however, that its lien is subordinated not to the rights of a secured creditor, but rather, to the personal, contractual rights of the timeshare owners. Scotiabank also argues, for the first time on appeal, that the subordination clause merely amounts to a non-disturbance agreement. Accordingly, it asks the Panel to reverse the final judgment of the bankruptcy court, enter a "declaratory judgment that the defendants do not pos-

sess valid liens against property of the estate," disallow the claims of the defendants as secured claims, and "allow them as general unsecured claims."

As in the proceedings below, Brito and del Valle maintain that their ownership rights are derived from P.R. Laws Ann. tit. 31, § 1931, which provides that "[o]wnership and other property rights are acquired ... in consequence of certain contracts...." They further argue that although the Purchase Contract is unrecorded, the "protected accommodation" status of their Unit Week nonetheless entitles them to ownership free and clear of the claims of any lien holder, pursuant to P.R. Laws Ann. tit. 31, § 1251b(29). Brito and del Valle also argue that although the bankruptcy court declared that the issue in this case is not whether the purchasers of timeshare units obtained a security interest, they are nonetheless holders of a statutory lien under § 101(53), as the owner of a protected accommodation.

## DISCUSSION

### I. Applicable Law

#### A. Dismissal of Complaint

"The jurisprudence of [Fed.R.Civ.P.] 12(b)(6) is applicable to motions to dismiss in bankruptcy cases." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d at 15 (citations omitted); *see also* Fed. R. Bankr.P. 7012(b) (incorporating by reference Fed.R.Civ.P. 12(b)(6)). "Even without a motion, a court on notice that it has previously decided an issue may dismiss the action [*sua sponte*], consistent with the res judicata policy of avoiding judicial waste." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d at 15 (internal quotations and citation omitted). "[*Sua sponte*] dismissals, though generally disfavored, may be appropriately entered where it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be

futile[."] *Harrington v. Delta Air Lines, Inc.*, No. 04–12558, 2006 WL 1581752, at *6 (D.Mass. Feb. 21, 2006) (citation and internal quotations omitted); *see also Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980) (district court has power to dismiss complaint *sua sponte* for failure to state a claim).

### B. Subordination

■■■ "A subordination agreement is merely a contractual modification of the priorities that would otherwise exist." 68 Am.Jur.2d *Secured Transactions* § 741 (2012) (footnote omitted). "A mortgage subordination has the effect of reducing the mortgage's priority below that of some other interest or group of interests in the real estate to which the mortgage would otherwise be superior." *Restatement (Third) of Prop.: Mortgages* § 7.7 (2011). "Subordination agreements are enforceable in bankruptcy only to the extent that they are enforceable under applicable nonbankruptcy law." 9D Am.Jur.2d *Bankruptcy* § 3391 (2012); *see also* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."); *In re Cliff's Ridge Skiing Corp.*, 123 B.R. 753, 764 (Bankr.W.D.Mich.1991) ("When a subordination agreement is enforceable under state law, it will be upheld by a bankruptcy court.").

### C. Puerto Rico's Timeshare Legislation: The Timeshare Act

As stated by The Timeshare Act, its purpose is:

... to recognize that the sale and promotion of timeshare plans and vacation clubs is an emerging, dynamic segment of the international tourism industry; that this segment of the tourism industry continues to grow, both in volume of sales and in complexity and variety of product structure; and that a uniform

and consistent method of regulation is necessary in order to safeguard Puerto Rico's tourism industry, Puerto Rico's consumers and Puerto Rico's economic well-being. In order to protect the quality of the [sic] Puerto Rico's timeshare plans and vacation clubs and the consumers who purchase them, it is necessary to give statutory recognition to timesharing and vacation clubs in Puerto Rico; to establish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans and vacation clubs; and to require every timeshare plan and vacation club offered for sale in Puerto Rico or created and existing with respect to accommodations and facilities that are located in Puerto Rico to be subjected to the provisions of this chapter.

P.R. Laws Ann. tit. 31, § 1251.

While little is written about The Timeshare Act, it is clear from its provisions and, in particular, its recurring theme of lien holder subordination, that the protection of the interests of timeshare owners is of the utmost importance. For example, The Timeshare Act provides for the protection of a purchaser's timeshare rights by requiring subordination agreements to provide that:

(a) The lienholder's right, lien or encumbrance upon the applicable accommodation, facility, timeshares or vacation club rights shall not adversely affect, and shall be subordinate to, the rights of any owners of timeshares, vacation club rights of any owners of timeshares, vacation club rights or accommodations, regardless of their respective dates of purchase, from and after the effective date of such document or instrument, whether through recordation or otherwise, and

(b) such lienholder, together with its successors and assigns, and any person who acquires such accommodation, facility, timeshares or vacation club rights through foreclosure, by deed in lieu of foreclosure, or other legal means:

(i) Shall hold title to such property subject to the rights of the owners of accommodations, timeshares or vacation club rights therein. . . .

P.R. Laws Ann. tit. 31, §§ 1251b(37)(a)–(b).

Section 1254 of The Timeshare Act further provides for lien holder subordination as follows:

(1) In order to demonstrate that a particular accommodation or facility is a protected accommodation or a protected facility, the developer shall provide the Company with satisfactory evidence that such accommodation or facility is owned, free and clear of the claims of any lien[ ]holder, by one or more owners of accommodations, timeshare or vacation club rights, unless one of the following has occurred with respect to each lien[ ]holder prior to any representation by the developer that the accommodation or facility is included as a part of the timeshare plan or vacation club:

(a) The lien[ ]holder has executed and recorded among the appropriate public records in the jurisdiction in which the subject accommodation or facility is located a subordination agreement which provides that:

(i) The subordination agreement shall be effective as between each owner and the lien[ ]holder, despite any rejection or cancellation of any such owner's purchase contract with the seller as a result of any bankruptcy proceedings with respect to the seller;

(ii) so long as an owner remains in good standing with respect to his obligations under the timeshare plan or vacation club documents, . . . the lien[ ]holder will honor all rights of such owner relating to the subject accommodation or facility as granted by

the timeshare or vacation club documents. . . .

P.R. Laws Ann. tit. 31, §§ 1254(1)(a)(i)–(ii).

## II. Analysis

█ Both the record on appeal and the law of Puerto Rico amply support the bankruptcy court's rejection of the allegations of the complaint and its conclusion that Scotiabank's lien was subordinated to the ownership interests of the timeshare holders. We agree with the bankruptcy court that it is indeed "clear from the documents, taken as a whole, that [the Debtor] intended to transfer interests in real property to the purchasers and that the purchasers intended to acquire an interest in real property." For example, the Purchase Contract provided that Brito and del Valle acquired "the *ownership* interest to the Unit Week in the Unit described" therein (emphasis added). Similarly, the OS defined "Purchaser" as a "prospective *owner*." (emphasis added). The subordination clause, itself, stated unequivocally that the first mortgage on the Property would be subordinated "in favor of the personal *ownership* interest of each owner of [a] timeshare." (emphasis added). Furthermore, Deed 17, which was the very foundation of the timeshare regime, defined "Unit Week," in pertinent part, as a "period of *ownership*." (emphasis added).

█ The nature of the timeshare holders' interests must be determined according to state law. *See NTA, LLC v. Concourse Holding Co., LLC (In re NTA, LLC)*, 380 F.3d 523, 528 (1st Cir.2004) (holding determination of property interests left to state law). Thus, Brito and del Valle aptly argue that Puerto Rico law provides that ownership may be acquired "as a consequence of certain contracts." P.R. Laws Ann. tit. 31, § 1931. Puerto Rico law further provides that, along with

their ownership status, Brito and del Valle acquired certain protections under The Timeshare Act, namely, ownership "free and clear of the claims of any lien[ ]holder." *See* P.R. Laws Ann. tit. 31, § 1251b(29). Moreover, Scotiabank having conceded the protected accommodation status of Brito and del Valle's Unit Week, and the subordination of its own lien, a conclusion that Brito and del Valle's ownership is free and clear necessarily follows. *See id.*

Because the language of P.R. Laws Ann. tit. 31, § 1251b(29) is clear, and the stated purpose of The Timeshare Act is the protection of consumer purchasers of Puerto Rico timeshares, we agree with the bankruptcy court's conclusion that Scotiabank's lien was subordinate to the ownership interests of the timeshare owners. *See Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995) ("plain meaning" of statute controls its construction, but "plainness" of statute's language is to be gleaned from the statute as a whole, including its overall policy and purpose). As one court stated: "The [timeshare] developer sells not only an interest in real property, but an interest in time. The time-share regime is meaningless unless the time-share purchasers' continued interests in the project are protected." *Kessler v. Nat'l Enters., Inc.*, 238 F.3d 1006, 1013 (8th Cir.2001). Thus, the bankruptcy court's rationale in this case that The Timeshare Act as well as the subordination clause safeguard these purchasers is persuasive. To conclude otherwise, would permit Scotiabank to renege on its obligations under the subordination clause, and deprive Brito and del Valle of the benefit of their bargain under the Purchase Contract.[11]

Scotiabank's argument that the effect of the subordination clause is tantamount to a

---

11. Having so concluded, we do not reach such issues as the precise type of timeshare

product which Brito and del Valle purchased,

non-disturbance agreement in an unrecorded lease, and its corresponding reliance on *Sombrero Reef Club, Inc. v. Allman (In re Sombrero Reef Club, Inc.)*, 18 B.R. 612 (Bankr.S.D.Fla.1982), does not alter this conclusion. First, Scotiabank waived this argument by failing to raise it below. *See Eastern Sav. Bank, FSB v. LaFata (In re LaFata)*, 483 F.3d 13, 22 (1st Cir.2007) (argument raised for the first time on appeal deemed waived). In any event, the argument is unpersuasive, and *Sombrero Reef Club, Inc.* inapposite. Although the bankruptcy court concluded in that case that the sales of certain timeshare interests did not amount to a sale of real property, the timeshare contracts in issue differed substantially from the Purchase Contract here. Most notably, they contained language which provided: "You understand that you will not have any interest in the properties or operations of the Resort, or any of its rooms or other facilities, or in the revenues therefrom, except the right to reserve and occupy accommodations and use certain facilities upon the terms and conditions contained in this Agreement." *In re Sombrero Reef Club, Inc.*, 18 B.R. at 618. Also, in *Sombrero Reef Club, Inc.*, the court was called upon to interpret the effect of explicit non-disturbance agreements obtained by the debtor from the mortgagee, and concluded that the agreements did not create anything more than a purchaser's right to use. See *id.* at 619–20. The record in this case, however, reveals no such agreements.

Based on all of the foregoing, it appears that any amendment to Scotiabank's complaint would have been futile, because, as far as the bank is concerned, the timeshare owners' superior interests, and resultant claims, are unassailable. The bankruptcy court's *sua sponte* dismissal of the com-

plaint effectively confirmed the timeshare owners' priority and status and was, therefore, appropriate.

## CONCLUSION

The Judgment of the bankruptcy court is hereby **AFFIRMED**.

or the value of that product, as such issues do not impact our decision and are more appro-

priately addressed by the bankruptcy court below, in the context of plan confirmation.