SELYA, Circuit Judge
(dissenting).
The majority focuses with laser-like intensity on the question of whether the intervals purchased by the timeshare buyers in this case constitute real property as opposed to purely contractual interests. After deciding that those intervals comprise real property, the majority then washes its hands of the matter.
In my view, the majority incorrectly answers the question that it poses. Equally as important, this question — no matter how it is answered — is not dispositive of the broader question of the parties’ rights in bankruptcy. For both of these reasons, I respectfully dissent.
The scene is easily set. As the majority concedes, the Timeshare Act allows a developer to choose between creating a timeshare regime in which purchased intervals (Units) are either contractual in nature or comprise “a special type of property right.” P.R. Laws Ann. tit. 31, § 1251a.
The majority rests its real property conclusion on two primary foundations. First, it argues that recordation of purchase agreements at the Registry of Property is not an absolute requirement for the creation of a real property timeshare regime. Ante at 276-78. That fact is both true and uncontroversial — but simply because a developer can do something does not mean that this developer followed such a course. The majority pays no heed to this second step, noting ambiguity in the dedication deed and then resting on conclusions of the bankruptcy court (conveniently deeming them unchallenged).
But I cannot accept the majority’s ipse dixit that the appellant is foreclosed from arguing that the timeshare regime is structured to convey wholly contractual rights. This argument has been a mainstay of the appellant’s case throughout the tortuous course of this litigation. As the majority itself concedes, the argument is “mentioned] repeatedly” in the appellant’s brief. Ante at 277-78. Indeed, the appellant spotlights this issue in the very first sentence of its argument summary, desig *282 nates it as a controverted issue on appeal, and refers to it many times in the body of its brief.[12]
Nor was the argument waived below. The appellant raised it before both the Bankruptcy Appellate Panel and the bankruptcy court (and both of those tribunals acknowledged as much). See In re Plaza Resort at Palmas, Inc., 469 B.R. 398, 404-05 (1st Cir. BAP 2012); In re Plaza Resort at Palmas, Inc., Ch. 11 Case No. 09-09980, Adv. No. 10-00175, slip op. at 5 (Bankr. D.P.R. May 4, 2011); see also Appendix A. To the extent that the bankruptcy court found the timeshare interests to be real property, see ante at 278-79, the appellant preserved the question by continuing to press the point to the Bankruptcy Appellate Panel and now to us.
In an effort to detour around this well-documented trail, the majority questions whether the appellant has developed its argument with sufficient meticulousness. In framing this question, however, the majority sets the bar too high.[13]
It is true, of course, that an argument “adverted to in a perfunctory manner” is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). This rule of practice, however, does not require that arguments be precise to the point of pedantry. Where, as here, an issue has been squarely advanced, an appellate court can — and in the interests of justice should — “go beyond the reasons ... articulated in the parties’ briefs to reach a result supported by law.” United States v. One Urban Lot Located at 1 St. A-1, 885 F.2d 994, 1001 (1st Cir.1989) (emphasis in original). The Supreme Court has made this point with conspicuous clarity: “[wjhen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.” Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). The inquiry, then, inevitably turns on the level of specificity that a court should require in order to deem an argument preserved.
In this case, the appellant has surpassed the requisite level of specificity. It advanced its contractual rights argument plainly, prominently, and persistently. Even the majority acknowledges that this argument presents the principal issue to be decided on appeal. See ante at 271.
To be sure, the contractual rights argument was awkwardly developed in some respects and did not always highlight the most telling aspects of the relevant documents. But an argument is not waived merely because it is inartfully crafted. See, e.g., United States v. Dunbar, 553 F.3d 48, 63 n. 4 (1st Cir.2009) (treating issue as preserved even though the “brief does not state [the] claim artfully”); Michelson v. Digital Fin. Servs., 167 F.3d 715, 719-20 (1st Cir.1999) (similar). What counts is that the appellant hinged its argument to the framework of the timeshare regime. That it did not parse each and every document evinces sloppy lawyering, but that failure, without more, does not produce a waiver. The documents are in the record, and an inquiring court must be *283 expected to carry out some independent inquiry.
Viewed against this backdrop, it is obvious to me that the issue is properly before this court. The appellant did enough, if barely, to preserve it for review. We are, therefore, duty-bound to resolve the issue based on the record and the governing law.
This brings me to the meat of the appeal. The timeshare documents, read in light of the Timeshare Act, demonstrate that the parties purposed to transfer contractual interests, not real property. The Timeshare Act, which provides that the nature of the interests to be conveyed is at the “option of the declarer,” puts the dedication deed (the Deed) at the center of this inquiry. P.R. Laws Ann. tit. 31, § 1251a.
Although the Deed will not win any prize for legal writing, it firmly supports the conclusion that the interests conveyed are contractual. I describe some salient features:
• Section V of the Deed is titled “Specific Timeshare Rights in Timeshare. (Contractual Interests in Unit Weeks and Appurtenant Rights).”
• The same section speaks of execution of a “contract of right to use and occupy,” through which the developer will grant “the contractual right to use and occupy.”
• The Deed definitions call for “Units” to be committed to the regime upon the execution of “contraet[s] of right to use and occupy.”
Given this straightforward language, I disagree with the majority’s characterization of the Deed as “ambiguous.” Ante at 278. To the exact contrary, it describes the contractual nature of the regime in terms that closely track section 1251a of the Timeshare Act. See P.R. Ann. tit. 31, § 1251a (describing “[a] contractual right to use and occupy”).
Even if the Deed were ambiguous on this point, extrinsic evidence would then become relevant to an ensuing inquiry into the parties’ intentions. See Smart v. Gillette Co. LTD Plan, 70 F.3d 173, 178 (1st Cir.1995) (describing appropriate uses of extrinsic evidence to aid interpretation of ambiguous contract). As this case was decided below at summary judgment, our review is de novo. The public offering statement and the purchase-and-sale agreement are key pieces of extrinsic evidence in the summary judgment record— and our inspection of these documents confirms that these timeshare interests are contractual.
Under the Timeshare Act, a public offering statement must be approved by the Puerto Rico Tourism Company and presented to every prospective buyer prior to any purchase of a Unit. P.R. Laws Ann. tit. 31, § 1255. The public offering statement for this development is part of the record, as are the appellees’ representations that they received, reviewed, and fully understood it. Consequently, the public offering statement is a prime source of extrinsic evidence here.
This statement leaves no doubt but that the timeshare regime was meant to be contractual. It provides unequivocally that “[ujnder the timeshare regime, contractual ownership interests will be sold to the Purchasers.” It goes on to say that the owners will be given “the exclusive use and occupancy” of certain Units by means of “contractual ownership interests.” To cinch matters, it defines “Timeshare Interest” and “Unit Week” as “the timeshare contractual ownership interest in the Plaza Resort owned by the Owner, which timeshare contractual ownership interest gives the Owner the exclusive use and occupancy of’ a certain Unit. Read in its entirety, the *284 public offering statement furnishes incontrovertible evidence of the developer’s intent to create and transfer contractual rights.
If more is needed, the timeshare interests here were conveyed by a purchase- and-sale agreement (the Sale Contract) tailored to this timeshare regime. The Sale Contract quite clearly indicates that the parties intended to transfer and receive contractual interests. For example, the developer facilitated bank financing for purchasers, and the Sale Contract requires the purchasers to pay the “fees relating to the UCC filing to perfect the security interest” of the lender in their Units. Whether or not these buyers actually availed themselves of this financing arrangement, this provision is material because, under applicable Puerto Rico law,[14] security interests in real property are perfected through recording in the Registry of Property, see P.R. Laws Ann. tit. 30, § 2577, not through UCC filings, see id. tit. 19, § 2004(j) (excluding real property interests from scope of UCC filing regime). Seen in this light, it is evident that the appellees did not consider the purchase of their Unit to be a real-estate transaction.
The Sale Contract supplies yet another clue that the parties meant to make the transferred ownership contractual in nature. Section 1264a of the Timeshare Act applies only to real property timeshare regimes. See id. tit. 31, § 1262. Although the majority is correct in noting that this provision does not explicitly require the instrument of transfer to “be embodied in any particular form,” ante at 277-78, it does demand that, as a real-estate conveyance, the instrument include “the particulars prescribed in [section] 1264(l)(b).” P.R. Laws Ann. tit. 31, § 1264a. In turn, section 1264(l)(b) requires a description of the Unit, including “its measures, location, rooms,” and other specific details. Id. § 1264(l)(b).
Here, the Sale Contract — which did not contain this information — constituted the instrument of transfer. It would seem, therefore, that the Sale Contract was incapable of conveying an interest in real property.
The majority’s riposte stems from a pro forma declaration that terms used in the contract shall have the same meaning as identical terms used in the Deed. From this single sentence, the majority extravagantly concludes that the Sale Contract complies with section 1264a. Ante at 280. I think that this conclusion is overly optimistic and, in all events, it would be highly unusual for parties to draft a real estate conveyance that omitted a meaningful legal description of the property conveyed. At the very least, such a glaring omission would make any fair-minded observer skeptical of whether the parties intended to transfer real property at all.
This powerful array of documentary evidence is not diminished by the majority’s rebanee on the use of words like “owner” and “ownership” in the Deed. See, e.g., ante at 278. The Timeshare Act defines the term “owner” in a manner that reaches timeshare buyers under both contractual and real property regimes. See P.R. Laws Ann. tit. 31, § 1251b(25) (defining “owner”). Moreover, the concept of “ownership” applies naturally to both contractual interests and real property interests-and the former reading is a superior fit for the language of the Deed and other transaction documents. If this were not the case, *285 phrases like “contractual' ownership interest” would make no sense.
Much the same is true of the bankruptcy court’s emphasis on the phrase “free and clear of all encumbrances” and the fact that the granted rights run in perpetuity. See In re Plaza Resort at Palmas, Inc., Ch. 11 Case No. 09-09980(SEK), Adv. No. 10-00175, slip op. at 10-11. These transaction terms are neutral; there is no earthly reason why their use would be inappropriate under a contractual rights regime.
Based on the totality of the documentary evidence, it seems virtually unarguable not only that the developer intended to create and transfer contractual timeshare interests but also that the appellees accepted their Unit on such an understanding. It follows that the majority’s heavy reliance on the permissive “may be recorded” language of section 1262a, see ante at 276-78, is misplaced. After all, the Timeshare Act specifically excludes contractual timeshare regimes from the grasp of section 1262a. See P.R. Laws Ann. tit. 31, § 1262.
Indeed, if the parties’ failure to record is relevant at all, it cuts the other way. Had the appellees believed that they were purchasing real property interests, they almost certainly would have recorded those interests. It is common ground that an owner’s failure to record an interest in real property exposes the owner to significant risk. Should a subsequent good-faith purchaser of the same property record first, he will become the rightful owner even though his deed is later in time. See P.R. Laws Ann. tit. 31, § 3822; see also United States v. One Urban Lot Located at 1 St. A-1, 865 F.2d 427, 429 (1st Cir.1989) (discussing the “safeguards of [Puerto Rico’s] strict Registry system”); United States v. V & E Eng’g & Constr. Co., 819 F.2d 331, 333 (1st Cir.1987) (describing Puerto Rico’s registry system as promoting “reliance on public records of property ownership”). Because recordation provides such important protections for real property buyers, it would be highly unusual for anyone, let alone parties who had lawyers and financing banks looking over their shoulders, to structure a real-estate conveyance without providing for recordatio.[15]
To sum up, I disagree with the majority’s conclusion that the rights possessed by the appellees are real property rights. I also disagree with the majority’s assumption that answering this question ends the inquiry. Let me explain.
This case was commenced as an adversary proceeding that sought a declaration as to whether the appellees should be regarded as secured creditors. But regardless of whether the appellees possess contractual or real property interests, their claim to secured creditor status requires a further determination because the Bankruptcy Code includes specific safeguards for timeshare buyers. See 11 U.S.C. §§ 101(53D), 365(h)-(j); see also 3 Collier on Bankruptcy ¶¶ 365.11(4), 365.12(3) (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2013).
The Bankruptcy Code has long furnished special protections to lessees or buyers of real property when the lessor or seller enters bankruptcy and seeks to reject the lease or purchase agreement as an executory contract. See 11 U.S.C. § 365(h)-(j). In 1984, Congress extended these protections to owners of timeshare interests. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. *286 No. 98-353, §§ 401-404, 98 Stat. 333, 366-67 (1984). This extension was intended to overrule cases like In re Sombrero Reef Club, Inc., 18 B.R. 612 (Bankr.S.D.Fla. 1982), which had allowed timeshare agreements to be rejected out of hand as execu-tory contracts. See In re Lee Road Partners, Ltd., 155 B.R. 55, 61 (Bankr. E.D.N.Y.1993); 3 Collier on Bankruptcy, supra, ¶ 365.11(4).
Under this prophylaxis, when a bankrupt debtor seeks to reject a timeshare agreement as an executory contract, the timeshare owner has two options. If the timeshare owner is in possession or the term of the timeshare interest has commenced, he may remain in possession of his timeshare interest. 11 U.S.C. § 365(h)(2)(A)(ii), (i)(l). If he does so, he can set off any damages caused by the debtor’s post-rejection nonperformance against any payments due to the debtor, including deferred purchase price installments and annual maintenance fees. Id. § 365(h)(2)(B), (i)(2)(A).
As an alternative, the timeshare owner can treat the timeshare interest as terminated and file a claim for damages against the bankruptcy estate. Id. § 365(h)(2)(A)(i), (i)(l). Under section 365(i), his damages claim would seem to be secured (at least up to the amount of the purchase price paid). See id. § 365(j). Under section 365(h), however, the claim would seem to be unsecured. See 3 Collier on Bankruptcy, supra, ¶ 365.11(4) (discussing availability of lien under subsection (i) but not under subsection (h)).
The facts here are inscrutable: the record before us does not indicate whether the appellees’ timeshare contract was ever formally rejected. By like token, it does not indicate whether the appellees were ever afforded an opportunity to make their election under section 365.
An authoritative determination as to whether the appellees are secured creditors cannot be made in a vacuum. On the one hand, unless and until the appellees’ timeshare interest is rejected, it may represent a valid and enforceable contract despite the bankruptcy. On the other hand, if the debtor has formally rejected the agreement — a course of action that seems consistent with the reorganization plan — section 365 would come into play and the appellees would have to be allowed to make elections as provided therein.
The situation is further complicated because the relationship between sections 365(h) and 365(i) is especially tenebrous in the timeshare context. See id. To the extent that these subsections may be relevant, it seems likely that factual findings will be helpful in determining not only which subsection will apply but also whether the appellees should be considered “in possession.” See generally 3 Collier on Bankruptcy, supra, ¶ 365.12(3) (discussing unique difficulty of “in possession” concept in timeshare context).
Here, there are no findings. With only a single (meaningless) exception, neither the parties nor the courts below have so much as acknowledged the existence of the relevant statutory provisions.
Given the utter absence of such findings, the appellees’ claim to secured creditor status is left up in the air. I would, therefore, reverse the decision holding the ap-pellees’ timeshare interest to be a real property interest and remand to the Bankruptcy Appellate Panel with instructions that it remand to the bankruptcy court for further proceedings.

APPENDIX A

Appellant’s Court of Appeals Brief

The appellant’s brief to this court contains its contractual rights argument in at least the following places:
*287 • The appellant’s argument summary begins: “[p]ursuant to the Timeshare Act, the Regime subject of this appeal was constituted to grant contractual (personal) rights to the timeshare owners since [the Deed], which dedicated the Regime, explicitly declares so.”
• The appellant’s second issue is framed as “[w]hether the owners ... may be granted secured creditor status ... despite the fact that the Regime was constituted by [the Deed] to grant contractual (personal) rights to the timeshare owners and no real property interest was conveyed.”
• The first bolded header in the briefs argument section reads: “[t]he Timeshare Regime was structured to confer contractual (personal) rights to the timeshare owners.”
• Later in the brief the appellant argues that “[the Deed] constituted the Timeshare Regime to grant contractual (personal) rights to the timeshare owners and no real property interest was conveyed pursuant to the Timeshare Act.”
• The appellant also declares that “[the Deed], which constituted the Regime in the present case, explicitly states, using the statutory language, that the timeshare rights in the Regime are of a contractual (personal) nature.”

Appellant’s Brief to the Bankruptcy Appellate Panel

The appellant’s brief to the Bankruptcy Appellate Panel contained its contractual rights argument in at least the following places:
• The brief presents the second issue as “[w]hether the owners of timeshare rights in the Regime may be granted secured creditor status ... despite the fact that the Regime was constituted by [the Deed] to grant personal (contractual) rights to the timeshare owners and no real property interest was conveyed.”
• The second sentence of the briefs statement of the case reads: “[the Deed] specifically states that the timeshare rights in the Regime are of a personal (contractual) nature.”
• In its synopsis of the facts, it declares that “[the Deed] specifically states that the timeshare rights in the Regime are of a personal (contractual) nature.”
• The first bolded header of its discussion section reads: “[t]he Timeshare Regime was structured to confer personal (contractual) rights to the timeshare owners.”

Proceedings Before the Bankruptcy Court

In proceedings before the bankruptcy court, the appellant pressed its contractual rights argument in at least the following places:
• The appellant’s initial adversarial complaint argues that “[the Deed] specifically states that timeshare rights in the Regime are of a personal (contractual) nature.”
• The first paragraph of the appellant’s memorandum of law in support of its motion for summary judgment argues that “the owners of timeshare rights in this particular regime have no property rights, but merely a contractual (personal) right.”
• The first sentence of the section of the appellant’s memorandum of law in support of its motion for summary judgment that applies the law to the facts reads: “[i]n this case, the Timeshare Regime was constituted to grant *288 personal (contractual) rights to timeshare owners.”

. I enumerate some examples in Appendix A. In the same appendix, I likewise list examples of similar arguments pressed by the appellant before the Bankruptcy Appellate Panel and the bankruptcy court.

. This attempt to evade the issue is particularly ironic because the majority relies on an interpretation of the Timeshare Act, see ante at 276-78, that the appellees have never mentioned at any stage of this litigation.

. Puerto Rico recently revised its version of the UCC. See Puerto Rico Act No. 21 of Jan. 17, 2012. Those revisions, not yet codified, do not apply to the matters at issue here. Accordingly, an explication of them would serve no useful purpose.

. In this regard, it is noteworthy that the transaction here was not geared to recordation. For aught that appears, the signatures on the pertinent documents were not even notarized.